# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-IA-01074-SCT

*ILLINOIS CENTRAL RAILROAD COMPANY*

*v.*

*MARY FRANCES TRAVIS, ADMINISTRATRIX OF THE ESTATE OF CLIFTON DAVIS TRAVIS, JR., DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/31/2000 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CURTIS R. PICOU |
| | CHAD MICHAEL KNIGHT |
| | THOMAS R. PETERS |
| ATTORNEYS FOR APPELLEE: | THOMAS W. BROCK |
| | WILLIAM S. GUY |
| | JOHN BOOTH FARESE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED AND REMANDED-02/28/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/21/2002 |

### BEFORE SMITH, P.J., COBB AND DIAZ, JJ.

### SMITH, PRESIDING JUSTICE, FOR THE COURT:

¶1. Mary Frances Travis (Administratrix of the Estate of Clifton Davis Travis, Jr., deceased), joined ninety-eight others in filing suit against Illinois Central Railroad Company (ICRR) in Marshall County, Mississippi, for alleged exposure to asbestos and products containing asbestos. ICRR moved to dismiss Travis's claims based on improper venue, improper joinder, and forum non conveniens. The circuit court denied this motion. This Court subsequently granted ICRR's request for permission to appeal. *See*, M.R.A.P. 5. Finding no error by the trial court, we affirm.

## FACTS

¶2. This is a case filed under the Federal Employers' Liability Act, 45 U.S.C. §§ 51 et seq. ("FELA"), alleging injuries and death due to exposure to asbestos. Mary Frances Travis is the administratrix of the estate of her late husband, Clifton Davis Travis. Travis worked for Illinois Central Railroad Company ("ICRR") from 1949 to 1990. Mr. Travis worked for ICRR as a stationary fireman, a machinist's helper, a carman helper, a carman, and a mechanical foreman. He was diagnosed with asbestosis on February 21, 1998. He developed lung cancer and died on July 21, 1998.

¶3. On October 9, 1998, Mrs. Travis joined 71 other former ICRR employees and filed a complaint under the FELA in the Circuit Court of Marshall County, Mississippi. Twenty-seven additional plaintiffs were later joined by amendment. Mrs. Travis's case, along with nine other cases, was set for trial to begin July 24, 2000. Mr. Travis was a resident of Tennessee. His wife is still a resident of Tennessee. He worked for ICRR in Kentucky and Tennessee. Plaintiffs claim there is a possibility that he did some work in Mississippi; although, defendants state that he never worked in Mississippi.

## STANDARD OF REVIEW

¶4. There are essentially two standards that are to be dealt with in reviewing the case at bar. First, as to the question of forum non conveniens, this Court will uphold the trial court's ruling unless it is clearly erroneous. "When considering a motion to dismiss, the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 165-66 (Miss. 1999) (citing *Butler v. Board of Supervisors*, 659 So.2d 578, 581 (Miss.1995); *Overstreet v. Merlos*, 570 So.2d 1196, 1197 (Miss.1990)). "A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor," and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence. *See City of Jackson v. Perry*, 764 So.2d 373, 376 (Miss.2000); *Puckett v. Stuckey*, 633 So.2d 978, 982 (Miss.1993); *Sweet Home Water & Sewer Ass'n v. Lexington Estates, Ltd.*, 613 So.2d 864, 872 (Miss.1993); *Allied Steel Corp. v. Cooper*, 607 So.2d 113, 119 (Miss.1992). "This Court will not disturb those findings unless they are manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Bell v. City of Bay St. Louis*, 467 So.2d 657, 661 (Miss.1985).

¶5. Second, as to the issues of improper venue and improper joinder, this Court uses a more deferential standard. The official comment to Rule 20 describes its purpose as:

> The general philosophy of the joinder provisions of these Rules is to allow virtually unlimited joinder at the pleading stage but to give the Court discretion to shape the trial to the necessities of the particular case.

Miss. R. Civ. P. 20.

¶6. In *First Investors Corp. v. Rayner*, 738 So.2d 228 (Miss.1999), this Court stated that Rules 20 and 42 give trial courts "broad discretion" in determining when and how claims are tried. *Id*. at 238. Therefore, for purposes of this appeal, this Court reviews the trial court judge's actions under an abuse of discretion standard. Federal appellate courts identify the appropriate standard of review as whether the trial judge abused his discretion when allowing or denying joinder. *Bobby Kitchens, Inc. v. Mississippi Ins. Guar. Ass'n*, 560 So.2d 129, 135 (Miss.1989). *See Fenton v. Freedman*, 748 F.2d 1358, 1361 (9th Cir.1984); *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir.1983).

¶7. "An application for a change of venue is addressed to the discretion of the trial judge, and his ruling thereon will not be disturbed on appeal unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the circumstances of the case." *Donald v. Amoco Prod. Co.*, 735 So.2d 161, 181 (Miss.1999) (citing *Estate of Jones v. Quinn*, 716 So.2d 624, 626 (Miss.1998)(quoting *Beech v. Leaf River Prods., Inc.*, 691 So.2d 446 (Miss.1997) (quoting *Mississippi State Highway Comm'n v. Rogers*, 240 Miss. 529, 128 So.2d 353, 358 (1961))))

.

## DISCUSSION

¶8. There are essentially three arguments made by ICRR. First, it claims that the circuit court erred in failing to dismiss Travis's claim for improper venue. Second, it claims that the circuit court committed error in failing to dismiss Travis's claim for improper joinder. Third, it claims that the circuit court erred in failing to dismiss or transfer Travis's claim based on the doctrine of forum non conveniens.

## (1) DID THE CIRCUIT COURT ERR IN FAILING TO DISMISS TRAVIS'S CLAIM FOR IMPROPER VENUE?

¶9. Under its first claim, ICRR argues that Miss. Code Ann. § 11-11-5 (Supp. 2001) controls the venue choice in this case. Thus, it argues that the only appropriate places for venue are where the action accrued, where the defendant has its principal place of business, or where the plaintiff resided. Miss. Code Ann. § 11-11-5. Second, ICRR contends that while Miss. R. Civ. P. 82(c) states that "[where several claims or parties have been joined, the suit may be brought in any county which any one of the claims could properly have been brought," this does not apply to those parties joined under Rule 20(a). It cites the second sentence of Rule 82(c) for this finding. That sentence states that:

> Whenever an action has been commenced in a proper county, additional claims and parties may be joined, pursuant to Rules 13, 14, 22, and 24, as ancillary thereto, without regard to whether that county would be the proper venue for an independent action on such claims or against such parties.

¶10. ICRR acknowledges that this Court has recently stated that "when Rule 20 joinder of parties is involved, 'venue is proper wherever it is proper as to one such claim.'" *American Bankers Ins. Co. v. Alexander*, 2001 WL 83952 *6 (Miss. February 1, 2001) (citing *McDonald v. Holmes*, 595 So.2d 434, 436 (Miss.1992)). Despite this fact, ICRR argues that in *Alexander* the defendant had conceded that Rule 82(c) applied if Rule 20 was used properly. It asserts that they make no such concession and further argues that the language of Rule 82(c), as well as the logic behind that rule, preclude its application where joinder is asserted under Rule 20.

¶11. Plaintiff argues that Travis is properly joined under Rule 20 of the Mississippi Rules of Civil Procedure, and thus Rule 82 (c) of the Mississippi Rules of Civil Procedure, which states that venue is proper for all plaintiffs where it is proper for one, makes Marshall County, Mississippi, an appropriate venue for this action. Plaintiff states that within the ten-plaintiff trial group that Travis is a part of, four of the plaintiffs worked for ICRR in Marshall County and were exposed to asbestos during that time. Further, plaintiff Dean Pounders currently resides in Marshall County.

¶12. First, this Court has previously stated that Miss. Code Ann. § 11-11-5 is not "the only venue statute to which parties may resort in an action against a railroad." *Missouri Pac. R.R. v. Tircuit*, 554 So. 2d 878, 881 (Miss. 1989). In that case, this Court found that this state's general venue statute, Miss. Code Ann. § 11-11-3 (Supp. 2001), provides additional venue options, including "where a non-resident corporation 'may be found'." *Id*. Thus, if ICRR can be "found" in Marshall County, Mississippi, this would be an additional venue option. However, plaintiffs' only argument is that Marshall County is the location where the cause of action accrued for at least four of the plaintiffs in this ten-plaintiff trial group, as well as others within the remaining ninety-nine plaintiffs. Their contention is that Rule 82(c) allows for venue to be

proper for all where it is proper for one.

¶13. As for ICRR's argument that Rule 82(c) does not apply to parties joined under Rule 20, Mississippi law has never suggested that Rule 82(c) might not apply. In two cases, this Court has simply stated that Rule 82(c) applied when parties are joined under Rule 20. The Alabama Supreme Court addressed an argument similar to this in *Ex parte Progressive Cas. Ins. Co*. 533 So.2d 230 (Ala. 1988). There it was argued that a party joined under a Rule 15 amendment to the pleading could destroy venue. The Alabama Supreme Court stated:

> [T]he second sentence of Rule 82(c) can be read to mean that the addition of parties whose relation to each other or to existing parties is different from the original plaintiff/defendant relation does not render venue improper or require severance. That sentence's omission of Rule 15 does not mean that amendments adding parties *do* render venue improper, but rather, the sentence is more properly interpreted as omitting reference to Rule 15 because that Rule is unlike the four that are mentioned. An amendment adding a party under Rule 15 is properly analogous to Rules 19 and 20, under which joinder is practiced in the original pleadings, and therefore comes within the import of the first sentence of Rule 82(c).

533 So.2d at 232-233. We agree with this reasoning. Thus, if joinder is appropriate as to the plaintiffs, then venue is proper to all under Rule 82(c) since it is proper to one or more of the plaintiffs.

### (2) DID THE CIRCUIT COURT COMMIT ERROR IN FAILING TO DISMISS TRAVIS'S CLAIM FOR IMPROPER JOINDER?

¶14. As to the second claim, ICRR contends that Travis is improperly joined under Rule 20(a) of the Mississippi Rules of Civil Procedure. Rule 20(a) provides in pertinent part that:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these persons will arise in the action.

This Court has recognized that the Official Comments to Rule 20 call for consideration on a case-by-case basis "utilizing a liberal approach toward joinder." *American Bankers Ins. Co. of Florida v. Alexander*, 2001 WL 83952 *4 (Miss. Feb. 1, 2001).

¶15. ICRR argues that plaintiffs can only claim that they all "worked for defendant at some time, at some place, and allegedly suffer from some asbestos-related injury," and that this does not establish that joinder is proper. ICRR points to a number of federal and state cases to support its claim of improper joinder that it contends share similar factual scenarios with the case at bar. ICRR cites *Abdullah v. ACANDS, Inc.*, 30 F.3d 264 (1st Cir. 1994), stating that there the appellate court agreed with the lower court's denial of joinder stating that the different product exposure, causation and damages between the plaintiffs militated against it.

¶16. First, the court stated in *Abdullah* that the case was "more appropriately viewed as a dismissal pursuant to Fed.R.Civ.P. 41(b)" on the grounds that it did not follow the local rules in regard to its suit. 30 F.3d at 269. Second, the First Circuit did agree with the trial court's finding of misjoinder, however, it was based on the fact that the complaint was "bereft of factual allegations indicating why 1000 plaintiffs and 93 defendants belong in the same action." *Id*. n. 5 ("It gives no indication of whether plaintiffs were injured

while serving on the same vessels or during the same time periods; no indication of whether they were injured by exposure to the same asbestos-containing products or equipment, nor any specification of the products or equipment to which they were exposed."); *See The Seibels Bruce Group, Inc. v. R.J. Reynolds Tobacco Co.*, 1999 WL 760527 (N.D.Cal. Sept. 21, 1999) ([Defendants' reliance on Abdullah] is misplaced. The court there did not dismiss plaintiff's subrogation claims because it aggregated all the individual asbestos' claimants; rather, it dismissed plaintiff's complaint because plaintiff failed to adhere to a court order requiring it to comply with the local rules governing joinder and specificity in asbestos litigation."). While ICRR might contend that the absence of claims regarding specific products is a fatal flaw in the present case, it must also be pointed out that there were 93 proposed defendants in *Abdullah* which would have made such an allegation much more important. In the case at bar, there is only one defendant, ICRR, and plaintiffs do list the materials and equipment that plaintiffs worked on or around while employed.

¶17. ICRR also relies on *Saval v. B.L. LTD.*, 710 F.2d 1027 (4th Cir. 1983). In *Saval*, the court considered whether it was an abuse of discretion to deny joinder to several owners of Jaguar automobiles who claimed vehicle defects of six types. 710 F.2d at 1029. The court found that each vehicle had a different service history, had been driven differently, was purchased at different times, and further noted that the appellants had not demonstrated that the alleged problems resulted from a common defect. *Id*. at 1031. Further, the court found that the allegations of fraud and common warranties did not satisfy the "transaction or occurrence" test as "[t]he only basis for presale allegations of fraud in this case consists of advertisements and warranties similar to those made by every automobile manufacturer who sells automobiles in this country."*Id*. at 1031-32.

¶18. One important difference between the case at bar and *Saval* is the procedural posture in which the cases were received on appeal. In the case at bar, this Court is reviewing the decision of a lower court judge to grant joinder under Rule 20(a). In *Saval*, the Fourth Circuit was reviewing a decision to deny joinder. This Court has recognized that it is inappropriate to substitute its judgment on such matters. *Alexander*, 2001 WL 83952 *4 (Miss. Feb. 21, 1999) ( In discussing *Bobby Kitchens, Inc. v. Mississippi Ins. Guaranty Ass'n.*, 560 So. 2d 129 (Miss. 1989), this Court stated: "Although we felt that 'the better choice would have been to allow joinder,' this Court correctly recognized that it could not substitute its own judgment."). This is the same rationale used by the Fourth Circuit when it distinguished a later case, *Hinson v. Norwest Fin. S. C., Inc.*, 239 F.2d 611 (4th Cir. 2001), from its holding in *Saval*. *Hinson*, 239 F.2d at 618.

¶19. ICRR cites *Bobby Kitchens, Inc.* for the proposition that joinder is improper where the only similarity between claims is that they are brought under the same general legal theory; however, in the discussion of the joinder issue, this Court merely stated the rule of joinder under Miss.R.Civ.P. 20, that the standard of review was abuse of discretion, then stated that the better choice would have been to allow joinder, but that it was not an abuse of discretion to deny it. 560 So. 2d at 135.

¶20. ICRR also looks to *Demboski v. CSX Transp., Inc.*, 157 F.R.D. 28, 30 (S.D. Miss. 1994), to support its argument that joinder is inappropriate in the case at bar. *Demboski* dealt with four different plaintiffs suing CSX over four separate railroad crossing accidents. The district judge noted that the complaint involved "different plaintiffs, separate accidents, different crossings, different train crews, different dates and times, different driver conduct, different vehicles, different injuries, different damages, different defensive postures, and different physical facts which relate to federal preemption." 157 F.R.D. at 29-30.

Based on this, the judge found that "[a]lthough Plaintiffs may develop some evidence indicating negligence on the part of Defendant that will be common to all claims, this Court is persuaded that common sense dictates that the evidence in other instances as to each specific incident will be so dissimilar that it would be very difficult to manage a consolidated trial." *Id*. at 30.

¶21. *Demboski* cites *Sun-X Glass Tinting of Mid-Wisconsin v. Sun-X Int'l, Inc.*, 227 F. Supp. 365 (W.D.Wis.1964), for an illustration of when joinder is inappropriate:

> For example assume 4 automobiles, A, B, C, and D. A and B collide, causing B to strike C, which in turn strikes D, parked at a curb. Here is a series of events which produce multiple claims. However, all possible claims will have stemmed from a common transaction or event, namely the collision of A and B. Further, assume A was at fault in the example; and further assume that 10 minutes earlier on the same highway, A negligently caused a collision involving E. Could it fairly be said that the claims of B, C, and D have any common question of law or fact with E's claim against A? There are separate series of events or transactions. *Id.* at 374-75.

> Just as in the illustration, the Court finds that the different crossing accidents did not stem from a common transaction or event, rather the crossing accidents stem from separate transactions which do not amount to a series of transactions or occurrences.

*Demboski*, 157 F.R.D. at 30.

¶22. ICRR also cites to *Grayson v. K-Mart*, 849 F. Supp. 785 (N.D. Ga. 1994), which this Court discussed in *Alexander*, 2001 WL 83952 (Miss. Feb. 1, 2001). *Grayson* involved eleven former K-Mart store managers who sued K-Mart for age discrimination under the ADEA and intentional infliction of emotional distress under the laws of four states. Joinder in *Grayson* "would have involved eleven different factual situations, eleven sets of work histories, eleven sets of witnesses and testimony, and the laws of four different states." *Alexander*, 2001 WL 83952 *5. In *Grayson*, the district court stated that:

> Plaintiffs have not...directed this Court's attention to any discrete program or procedure employed by K Mart that affected each of the plaintiffs in this litigation. Absent some causal link between a common and identifiable wrongful act on the part of the defendant and the adverse action taken with respect to each plaintiff, the first prong of Rule 20(a) is not satisfied.

849 F. Supp. at 788. *Grayson* further stated that the second prong of Rule 20(a) was not met as:

> [E]ach demotion decision affecting the plaintiffs in these cases was a discrete act by the defendant. "As indicated, the factual and legal questions between the plaintiffs and the defendant are based upon the wholly separate acts of the defendant with respect to each plaintiff."

*Id*. (quoting *Smith v. North Am. Rockwell Corp.*, 50 F.R.D. 515, 524 (N.D. Okla. 1970)).

¶23. Finding that the plaintiffs in *Alexander* were appropriately joined, this Court stated that:

> It is clear that all of the plaintiffs' claims arise out of the same pattern of conduct, the same type of insurance, and involve interpretation of the same master policy. All of the plaintiffs' claims are similar with the exception of the actual dollar amount charged on premiums....[Further], [i]n the case at hand, individual treatment did not take place but instead the same fraudulent scheme or course of conduct

was allegedly involved.

*Id*.

¶24. As for whether plaintiff Travis is properly joined in the case at bar, two considerations must be addressed. First, whether the causes of action arise out of the same transaction or occurrence. Second, whether there is a question of law or fact common to all the plaintiffs. Travis argues that these claims arise out of ICRR's "policy of not warning or protecting its workers from the hazards of asbestos exposure, and breaching its non-delegable duty to provide a reasonably safe place to work."

¶25. As to the second prong of the Rule 20(a) test, Travis argues that there are multiple questions of law and fact that are common to all plaintiffs. Common questions of law, alleged by plaintiffs, include:

a) ICRR's negligence in failing to warn its employees of the dangerous hazards of asbestos

b) ICRR's negligence in failing to provide asbestos exposed employees' respirators, protective clothing and/or proper ventilation

c) ICRR's negligence in not providing plaintiffs and plaintiffs' decedents a reasonably safe place to work

d) ICRR's negligence in not substituting non hazardous materials for asbestos

e) ICRR's negligence in failing to test or monitor the work environment of plaintiffs and plaintiffs' decedents for the presence of dangerous concentrations of asbestos dust.

Common questions of fact, alleged by plaintiffs, include: one employer defendant for all plaintiffs; each plaintiff worked on the same or similar equipment and machinery owned by ICRR; each plaintiff claims asbestos disease; ICRR had actual knowledge of the hazards of asbestos by 1935; ICRR, in 1937, drafted rules for the prevention of asbestosis which it failed to follow-these rules include a written policy of not informing its employees that asbestos could be hazardous; ICRR failed to warn these plaintiffs; and ICRR failed to provide protective gear for these plaintiffs.

¶26. Travis cites ***In re Norplant Contraceptive Prods. Liab. Litig.***, 168 F.R.D. 579 (E.D. Tex. 1996), to support its argument that Rule 20(a) joinder requirements are met. In ***Norplant***, the defendants attempted to argue that plaintiffs could not be joined together unless they had their Norplant system inserted by the same physician or at the same medical facility. 168 F.R.D. at 581. The judge rejected this reasoning and agreed with plaintiffs that "the same transaction, occurrence or series of transactions or occurrences requirement of Rule 20(a) is met by [Plaintiffs'] allegation that Defendants, in the same series of acts and omissions specified in sealed Exhibit A, failed in their nationwide promotional materials to adequately warn Plaintiffs of the risks and severity of side effects associated with the use of Norplant." *Id*. He further agreed that the second prong of Rule 20(a) was met "given that common questions of law or fact exist in Plaintiffs' allegations of negligence, misrepresentation, and fraud arising out of the alleged series of acts and omissions committed by Defendants." *Id*.

¶27. We find that the lower court did not abuse its discretion in allowing the joinder of these Plaintiffs.

**(3) DID THE CIRCUIT COURT ERR IN FAILING TO DISMISS OR TRANSFER**

**TRAVIS' CLAIM BASED ON THE DOCTRINE OF FORUM NON CONVENIENS?**

¶28. As to the third argument, ICRR asserts that the doctrine of forum non conveniens makes Marshall County an inappropriate forum to hear Travis's claim. This Court has recognized that this doctrine is "inapplicable when the trial court is faced with a choice of venue between two Mississippi counties." ***Clark v. Luvel Dairy Prods., Inc.***, 731 So. 2d 1098, 1107 (Miss. 1998). ***See also Pisharodi v. Golden Triangle Reg'l Med. Ctr.***, 735 So. 2d 353 (Miss. 1999); ***Donald v. Amoco Prod. Co.***, 735 So. 2d 161 (Miss. 1999); ***Salts v. Gulf Nat. Life Ins. Co.***, 743 So. 2d 371 (Miss. 1999). However, it still applies when dealing with the question of whether another state would be a more appropriate forum. "A state will not exercise jurisdiction if it is a seriously inconvenient forum for the trial of the action provided that a more appropriate forum is available to the plaintiff." ***Metropolitan Life Ins. Co. v. Aetna Cas. & Sur. Co.***, 728 So.2d 573, 576 (Miss.1999) (citing ***Shewbrooks v. A.C. & S., Inc.***, 529 So. 2d 557, 561 (Miss. 1988)).

¶29. ICRR accurately states that this Court has developed a seven-factor test when considering a motion to dismiss claim pursuant to the doctrine of forum non conveniens. These seven factors are: (1) relative ease of access to sources of proof, (2) availability and cost of compulsory process for attendance of unwilling witnesses, (3) possibility of viewing the premises, (4) unnecessary expense or trouble to the defendant not necessary to the plaintiff's own right to pursue his remedy, (5) administrative difficulties for the forum courts, (6) whether there are local interests in deciding the case at home, and (7) the plaintiff's forum should rarely be disturbed. ***Tircuit***, 554 So. 2d at 882. These are to be considered on a case-by-case basis.

### (A) Relative Ease of Access to Sources of Proof

¶30. ICRR argues that the record makes no mention of any substantial source of proof in this case present in Mississippi. However, Travis cites to a recent case where this Court took notice of ICRR's activities within Mississippi.

> First, there is an ease of access to sources of proof in Mississippi. The record indicates that ICR maintains an extensive business presence in Jackson, Mississippi. For example, in a document produced in the record marked "Illinois Central Corporate Headquarters," ICR's offices are listed. ICR maintains a transportation center and a quality service center at 2151 N. Mill St., Jackson, Mississippi. Next, the document indicates that ICR also maintains and operates an intermodal facility at 100 N. Commerce Park Drive, Jackson, Mississippi, and an automotive facility at 350 N. Market St., Jackson, Mississippi.

***Illinois Cent. R.R. v. Samson***, 799 So. 2d 20, 23 (Miss. 2001).

¶31. Two of ICRR's physician expert witnesses reside in Jackson, Mississippi; the individual responsible for asbestos removal from the ICRR system and documents related to this are housed in the Jackson, Mississippi offices; and, further, the person that ICRR identified as its employee with knowledge of claims or defenses of any party in this suit or who has knowledge of discoverable matter resides in Memphis, Tennessee, which is a short drive from Marshall County, Mississippi.

### (B) Availability and Cost of Compulsory Process for Attendance of Unwilling Witnesses

¶32. ICRR contends that all of the witnesses disclosed in discovery are located outside of Mississippi, and that it does not have the use of compulsory process for those witnesses who reside in Tennessee and

Kentucky. While this is true, it must be recognized that in cases such as this, where it is the norm for employees to work across state lines, that no state would ever be perfectly convenient on this standpoint. Further, it would be appropriate for ICRR to compel video depositions of any out-of-state witnesses that could later be shown to the jury. As stated above, some of ICRR's witnesses are within the state. Further, at least two co-worker witnesses are residents of Mississippi. Clearly, this case is distinguishable from *Tircuit* where no witnesses could be found in Mississippi.

### (C) Possibility of Viewing the Premises

¶33. ICRR argues that if this case is tried in Marshall County, Mississippi that a view of the premises where Travis's decedent worked would be impractical and unfeasible. However, Plaintiff asserts that the Fulton, Kentucky location where Mr. Travis worked has been destroyed (although this is not mentioned in the record). It is apparent that visits to premises would be impractical no matter where the trial was held, as all employees worked at locations across three states. Further, Plaintiff notes that the steam locomotives which Mr. Travis and other plaintiffs operated are no longer in use, and many have been destroyed. Thus, this is not a factor that weighs against Mississippi being a proper forum.

### (D) Unnecessary Expense or Trouble to the Defendant Not Necessary to the Plaintiff's Own Right to Pursue His Remedy

¶34. In the case at bar, ICRR has offices within Mississippi and some of its witnesses are within the State. Unlike in *Tircuit*, trial in Mississippi would not "inflict upon [Defendant] expense over and above that necessarily incident to affording these Plaintiffs their right to pursue their FELA remedy." 554 So. 2d at 883.

### (E) Administrative Difficulties for the Forum Courts

¶35. ICRR makes no new argument under this factor, other than to refer to the fact that witnesses and locations are outside of this State. It must be noted, however, that the documents regarding ICRR's removal of asbestos and several witnesses are within Mississippi, as well as numerous plaintiffs who are Mississippi residents and who worked in the Marshall County location. In *Tircuit*, we found that the administrative difficulties would be "enormous, if not insurmountable;" however, unlike *Tircuit*, the defendant *sub judice* has offices and witnesses that can be found within the State.

### (F) Whether There Are Local Interests in Deciding the Case at Home

¶36. Again, this case is easily distinguishable from *Tircuit* where none of the plaintiffs were Mississippi residents, and none had been injured within Mississippi. In the case below, there are several residents of Mississippi and other plaintiffs whose causes of action occurred in whole or in part within Mississippi. Further, ICRR has long operated within this State. This gives rise to a local interest in deciding this case in Mississippi, and having Plaintiff Travis joined should not remove this local interest.

### (G) Plaintiff's Forum Should Rarely Be Disturbed

¶37. This factor is discussed in *Tircuit*:

> While, unless the balance is strongly in favor of the defendant, the choice of a plaintiff who is a resident of the forum "should rarely be disturbed," deference to the plaintiff is less compelling when the

plaintiff is a non-resident. There is no reason to assume a non-resident plaintiff will choose a foreign forum for purposes of convenience.

*Id*. at 882.

¶38. In the case below, Plaintiff Travis is a non-resident, and thus her choice is less compelling. However, this Court recognized that while a non-resident plaintiff's choice of venue may receive less deference, this does not mean that their choice is given no deference. ***Metropolitan Life Ins. Co. v. Aetna Cas. & Sur. Co.***, 728 So.2d 573, 576 (Miss.1999). The factors under the forum non conveniens test do not weigh against Plaintiff's venue choice. Thus, it is appropriate to give some deference to Plaintiff Travis's choice of Marshall County. We find that the trial court properly denied ICRR's Motion to Dismiss based on forum non conveniens.

## CONCLUSION

¶39. We find that joinder was appropriate under Rule 20(a) of the Mississippi Rules of Civil Procedure, and venue that is proper to one plaintiff is proper for all under Rule 82(c). Thus, it was appropriate, and not an abuse of discretion, for the trial court to deny the motion to dismiss as to the improper joinder and improper venue claims. Finally, the trial court's finding as to the claim of forum non conveniens is not clearly erroneous. Based on these findings, we affirm the trial court's denial of ICRR's motion to dismiss Plaintiff Travis's claim, and we remand this case to the trial court for further proceedings consistent with this opinion.

¶40. **AFFIRMED AND REMANDED.**

**PITTMAN, C.J., McRAE, P.J., WALLER, COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.**